UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

GECKO PARKS, LLC

Case No.: 20-18973-SMG

    Debtor-in-Possession.
_____/

**DEBTOR IN POSSESSION'S APPLICATION FOR EMPLOYMENT OF THREE TWENTY-ONE CAPITAL PARTNERS, LLC TO REPRESENT DEBTOR IN AN ASSET SALE, MERGER, OR SALE OF EQUITY INTEREST OF DEBTOR, OR, IN THE ALTERNATIVE, AN EQUITY INVESTMENT IN THE DEBTOR EFFECTIVE AS OF AUGUST 20, 2020**

GECKO PARKS, LLC, the Debtor-In-Possession, files this *Application for Employment of Twenty-One Capital Partners, LLC to Represent Debtor in an Asset Sale, Merger, or Sale of Equity Interest of Debtor or, in the Alternative, an Equity Investment in the Debtor Effective as of August 20, 2020,* and respectfully requests the entry of an order of the Court authorizing the employment of Three Twenty-One Capital Partners, LLC ("3-21") effective as of August 20, 2020, to represent the Debtor in this case and states:

    1.    On August 20, 2020, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

    2.    The Debtor desires to employ 3-21 to sell all, or a portion of, the assets or securities associated with Debtor, in whole or in part, at the discretion of Client, via an asset sale, merger, sale of equity interest by Debtor or, in the alternative an equity investment in the Debtor (the "Transaction").

    3.    The Debtor believes that 3-21 is qualified to represent the Debtor in the Transaction.

    4.    3-21 is a private investment bank and advisory firm providing Wall Street Quality Advisory and Investment Banking Services to the under-serviced lower-middle market and has

*JD*

executed or advised engagement with over $15 billion in transaction value.

5. 3-21's team is comprised for CFA's, CPA's, business owners and turnaround and business crisis professionals that have experience in every facet of the business continuum, from inception to exit.

6. The professional services 3-21 will provide are as follows:

(a) Work with Debtor to devise the best course of action to effectuate the desired outcome for the Debtor.

(b) Conduct due diligence on Debtor's Business.

(c) Create a marketing plan.

(d) Create financial modeling to aid in the Transaction.

(e) Work with third party professionals and creditors.

(f) Prepare marketing materials, confidential information presentation and secure due diligence data room which will include information regarding the Business. (Debtor shall have final approval of all materials and their use and prior approval of all prospective purchasers given access to the data room).

(g) Endeavor to locate parties who may have an interest in a Transaction with the Debtor.

(h) Circulate materials, as appropriate and approved by Debtor, to facilitate a Transaction.

(i) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to Debtor as to whether an offer should be accepted.

(j) Communicate regularly with Debtor about the status of 3-21's efforts with respect to marketing efforts.



(k) Recommend to Debtor the proper method of handling any specific problems encountered with respect to the marketing of the Debtor.

(l) Perform related services necessary to maximize the proceeds to be realized for the Debtor.

(m) 3-21 shall have no authority to bind Debtor to any agreements or offer.

7. To the best of the Debtor's knowledge, 3-21 has no connection with the creditors or other parties in interest or their respective attorneys.

8. Debtor believes that 3-21 does not represent any interest adverse to the debtor.

. Attached to this motion is the proposed affidavit demonstrating 3-21 is a disinterested as required by 11 U.S.C. §327(a) and a verified statement as required under Bankruptcy Rule 2014.

The Debtor respectfully requests an order authorizing retention of Chad Van Horn, Esq., the law firm of Van Horn Law Group, Inc. and its' regular associates, on a general retainer, pursuant to 11 U.S.C. §§327 and 330.

DATED: September 14, 2020    Respectfully submitted:
                              GECKO PARKS, LLC

                              By: /s/ John Duran
                              John A. Duran, Jr.
                              Its: Manager



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:
GECKO PARKS, LLC

Case No.: 20-18973-SMG

Debtor-in-Possession.
_____/

**AFFIDAVIT OF SENIOR MANAGING DIRECTOR
FOR THREE TWENTY-ONE CAPITAL PARTNERS, LLC**

STATE OF Maryland )
) ss
COUNTY OF Howard )

Ervin M. Terwilliger, being duly sworn, says:

1. I am the Senior Managing Director for THREE TWENTY-ONE CAPITAL PARTNERS, LLC ("3-21"), with offices located at 5950 Symphony Wood Road. #200, Columbia MD 21044.

2. Neither I nor 3-21 represents any interest adverse to the Debtor or the estate, and we are disinterested persons as required by 11 U.S.C. § 327(a).

3. Neither I nor 3-21 has any connections, other than professional, with creditors, any other party in interest, their respective attorneys and accountants, the U.S. trustee, or any person employed in the Office of the U.S. Trustee.

4. Except for the representation of the Debtor as outline in the attached Agreement, neither I nor 3-21 will represent any other entity in connection with this case and neither I nor 3-21 will accept any fee from any other party or parties in this case.

5. I respectfully request an order authorizing retention of THREE TWENTY-ONE CAPITAL PARTNERS, LLC.

FURTHER AFFIANT SAYETH NAUGHT.

Ervin M. Terwilliger
Senior Managing Director

Sworn to and Subscribed before me
this 18 day of September, 2020.

My Commission Expires: 06/15/2024
Notary Public, State of Maryland

_____ Personally known to me; or produced Maryland Driver's License as identification.

## AGREEMENT BETWEEN GECKO PARKS, LLC AND THREE TWENTY-ONE CAPITAL PARTNERS, LLC

THIS Agreement ("Agreement") is made this __26__ day of August 2020 by and between **GECKO PARKS, LLC DBA GECKO PARX** (the "Client"), and **THREE TWENTY-ONE CAPITAL PARTNERS, LLC** ("3-21"). Client and 3-21 are referred to in this Agreement as a "Party" and collectively, as the "Parties".

**RECITALS**

WHEREAS, Client desires to engage 3-21 to sell all, or a portion of, the assets or securities associated with Client and its associated assets, as applicable (collectively referred to herein as the "Business"), in whole or in part, at the discretion of Client, via an asset sale, merger, sale of equity interests by the Client or its shareholders or an equity investment in the Client (a "Transaction"); and

WHEREAS Client has filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), Chapter 11 Case Number 20-18973-SMG (the "Chapter 11 Case");

WHEREAS, 3-21 is an investment banking and transaction advisory firm with substantial experience advising clients in asset sales in bankruptcy and assignment of the benefit of creditors proceedings; mergers and acquisitions, equity investments, including debt and equity recapitalizations; joint ventures; purchases of chattels and real property; Article 9 transactions; and bulk sales and liquidations; and

WHEREAS, Client desires to retain 3-21 to provide advisory services in connection with a Transaction, and 3-21 agrees to perform the services described herein, on the terms and conditions set forth in this Agreement; and

**NOW THEREFORE**, in consideration of the promises contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree, subject to all the terms, covenants, conditions and provisions hereinafter set forth, as follows:

1. **INCORPORATION OF RECITALS.** The Recitals set forth above are incorporated into and made a part of this Agreement.

2. **EXCLUSIVE AGENCY.** Client hereby retains 3-21 as exclusive agent, to utilize 3-21's experience to secure a Transaction. The term of 3-21's exclusive agency shall begin as of the date of this Agreement and shall continue for one hundred and eighty days (180) days. This Agreement shall automatically be extended in 30-day increments unless cancelled in writing prior to termination of the exclusive period. Notwithstanding provisions herein, either party may terminate this Agreement upon not less than thirty (30) days' prior notice to the non-terminating party, subject to the provisions of Paragraph 6 below.

3. **SERVICES.** 3-21 shall perform the following services in accordance with the terms and

conditions of this Agreement:

(a) Work with Client to devise the best course of action to effectuate the desired outcome for the Client.

(b) Conduct due diligence on Client's Business.

(c) Create a marketing plan.

(d) Create financial modeling to aid in the Transaction.

(e) Work with third party professionals and creditors.

(f) Prepare marketing materials, confidential information presentation and secure due diligence data room which will include information regarding the Business. (Client shall have final approval of all materials and their use and prior approval of all prospective purchasers given access to the data room).

(g) Endeavor to locate parties who may have an interest in a Transaction with the Client.

(h) Circulate materials, as appropriate and approved by Client, to facilitate a Transaction.

(i) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to Client as to whether an offer should be accepted.

(j) Communicate regularly with Client about the status of 3-21's efforts with respect to the marketing efforts.

(k) Recommend to Client the proper method of handling any specific problems encountered with respect to the marketing of the Business.

(l) Perform related services necessary to maximize the proceeds to be realized for the Business.

(m) 3-21 shall have no authority to bind Client to any agreements or offers.

3-21's services shall commence upon execution of this Agreement by Client.

4. **OFFERING PROCEDURE.** The following procedures shall apply to the marketing and offering of Client's Business:

(a) All communications and inquiries regarding a potential Transaction shall be directed to 3-21.

(b) To be considered, all offers must be accompanied by appropriate financial material showing ability to close a Transaction and include a deposit when deemed necessary.

(c) Client shall have the right to:

(i) Determine in its sole discretion which offer, if any, is to be accepted; and

(ii) Reject, at any time, any offer which, in the Client's sole discretion, is deemed to be inadequate or insufficient or not in conformity with the terms and conditions of this Agreement

(d) Client, upon notice to those parties which have submitted offers, may impose other terms and conditions as it may determine to be in the best interest of the Client.

5. **EXPENSES.** Client shall promptly pay the deal-related expenses (the "Expenses") incurred by 3-21 during the term of this Agreement. Unless otherwise agreed to by Client, Expenses are limited to marketing costs, business services, data room expenses, database services, printing, mailing, and travel-related expenses. If Client is unable to pay the Expenses when due, such unpaid amounts will be paid from the proceeds of a Transaction. In the case of multiple Transactions unpaid Expenses shall be paid from the proceeds of the first Transaction to close. EXPENSES shall not exceed Twenty-Five Hundred Dollars ($2,500) without prior approval from the CLIENT.

6. **RETAINER.** The "Retainer" shall be Ten Thousand Dollars ($10,000). The Retainer shall be split into four payments. The first payment of Twenty-Five Hundred Dollars ($2,500) is due upon Bankruptcy Court approval of 3-21's retention. The remaining three payments of Twenty-Five Hundred Dollars ($2,500) each shall be paid monthly thereafter. If Client is unable to pay the Retainer payments when due, such unpaid amounts will be paid from the proceeds of a Transaction. In the case of multiple Transactions unpaid Expenses shall be paid from the proceeds of the first Transaction to close. In the event that the client withdraws from bankruptcy, the balance of retainer will be due in full.

7. **TRANSACTION VALUE.** In the event of a change of control Transaction of the Client's Business, the term "Transaction Value" as used in the Agreement shall include the gross sum of the following payments or assumptions by the purchaser:

(a) The total value of all consideration (including cash, securities or other property) paid or received or to be paid or received, directly or indirectly, in connection with a Transaction in respect of the assets of the Company or the outstanding securities of the Company on a fully diluted basis (treating any securities issuable upon the exercise of options, warrants or other convertible securities and any securities to be redeemed as outstanding, whether or not vested), plus the principal amount of any debt (including, but not limited to leases and accounts payable) of the Company outstanding as of the closing date of a Transaction or directly or indirectly assumed, refinanced or extinguished in connection with a Transaction, and amounts payable in connection with agreements not to compete, employment agreements, transition services agreements or similar arrangements. If any

portion of Transaction Value is payable in the form of securities, the value of such securities, for purposes of calculating 3-21's Transaction fee, will be determined based on the fair market value of such securities as mutually agreed upon in good faith.

(b) If the change of control Transaction takes the form of a recapitalization, equity investment, or similar Transaction, "Transaction Value" will also include the value of all shares retained by the shareholders of the acquired company or the value of equity interests rolled over or invested into a new corporate entity.

(c) Fees relating to contingent or deferred payment of the Transaction Value (including consulting, transition services and/or employment agreements) shall be paid at close based on the highest commission rate then applicable to the aggregate Transaction Value due at closing.

(d) The fees and expenses of 3-21, and all other closing costs shall not be deducted when computing Transaction Value or the fee to be paid to 3-21.

If the Transaction takes the form of a recapitalization, equity investment, or similar Transaction without change of control, "Transaction Value" will be the total value of all consideration (including cash, debt or equity securities, or other property) paid or received or to be paid or received, directly or indirectly, in connection with a Transaction in respect of the to the newly issued debt or equity securities of the Client or securities sold by existing shareholders of the Client.

8. **3-21 FEE.** As compensation under this Agreement, and for facilitating a Transaction in accordance with the terms hereof, 3-21 will be paid a fee, in cash, at the Closing of any Transaction (the "Fee") based upon Transaction Value received by Client and computed using the following formula:

- Eight Percent (8.0%) of all Transaction Value

The Fee shall be the greater of the above calculation or One Hundred Thousand Dollars ($100,000). The Fee shall be paid in cash from the proceeds of the sale at Closing with respect to any portion of the Transaction Value.

A "Registered Prospect" shall be considered a qualified lead contacted by 3-21 during the exclusive engagement of 3-21. 3-21 shall be entitled to receive its fee from any Transaction made within Two (2) Years following the termination of this Agreement by a Registered Prospect identified by 3-21 prior to the effective date of the termination of this Agreement.

If a Transaction or any portion thereof requires approval by the Bankruptcy Court, Client shall not directly or indirectly request or support the entry of any order unless such preserves 3-21's right to be paid at closing all Fees and Expenses due.

9. **NOTICES.** All notices, statements, demands, requests, consents, communications and certificates from any party hereto to the other, shall be made in writing and sent by United States registered mail or certified mail, return receipt requested, postage prepaid, addressed as follows:

   (a) If intended for the CLIENT:

   John Duran
   Gecko Parks, LLC
   Chief Executive Officer
   3305 Corporate Ave
   Weston Fl 33331
   John@geckoparx.com

   With a copy to:
   Chad Van Horn
   Managing Partner
   Van Horn Law Group, P.A.
   330 N Andrews Ave, Suite 450
   Ft Lauderdale, FL 33301
   Chad@cvhlawgroup.com

   (b) If intended for 3-21:

   Ervin M. Terwilliger
   Three Twenty-One Capital Partners, LLC.
   5950 Symphony Woods Rd #200
   Columbia, MD 21044
   erv@321capital.com

   or other such addresses or entities either party hereto may from time to time direct by service of notice on the other party as provided above.

10. **INDEMNIFICATION.** In the event that 3-21 becomes involved in any capacity in any action, proceeding or investigation brought by or against any person, including stockholders of the Client, in connection with or as a result of either its engagement or any matter referred to in this Agreement, the Client will reimburse 3-21 for its reasonable legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith. The Client also will indemnify and hold 3-21 harmless against any and all losses, claims, damages or liabilities to any such person in connection with or as a result of either its engagement or any matter referred to in this Agreement, except to the extent that any such legal and other expenses, loss, claim, damage or liability results from the gross negligence or bad faith of 3-21 in performing the services that are the subject of this Agreement. If for any reason the foregoing indemnification is unavailable to 3-21 or insufficient to hold it harmless, then the Client shall contribute to the amount paid or payable by 3-21 as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect the relative economic interests of the Client and its stockholders on the one hand and 3-21 on the other hand in the matters contemplated by this Agreement as well as the relative fault of the Client and 3-21 with respect to such loss, claim, damage or liability and any other relevant equitable considerations. The reimbursement, indemnity and contribution obligations of the Client under this paragraph shall be in addition to any liability which the Client may otherwise have, shall extend upon the same

terms and conditions to the partners, directors, agents, employees and controlling persons (if any) of 3-21 and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Client, 3-21, and any such person.

11. **DISCLAIMER AND WAIVER OF LIABILITY.** Client will verify all qualifications of any party it enters a Transaction. 3-21 will not make any verifications or warranties, including, but not limited to, counterparties' health, experience, competency, residency or financial status. 3-21 shall not be liable or responsible for any claims and damages of any kind to Client relating to the above referenced Transactions, including, but not limited to, all claims and damages of every kind attributable to the performance or non-performance of Client and /or a counterparty in any Transaction.

12. **INFORMATION; RELATIONSHIP OF THE PARTIES.** The Client recognizes that, in providing our services pursuant to this Agreement, 3-21 will rely upon and assume the accuracy and completeness of all of the financial, accounting, tax and other information discussed with or reviewed by us for such purposes, and 3-21 does not assume responsibility for the accuracy or completeness thereof. 3-21 will have no obligation to conduct any independent evaluation or appraisal of the assets or liabilities of the Client or any other party or to advise or opine on any related solvency issues. It is understood and agreed that 3-21 will act under this Agreement as an independent contractor with duties solely to the Client and nothing in this letter or the nature of our services in connection with this engagement or otherwise shall be deemed to create a fiduciary duty or fiduciary or agency relationship between us and the Client or its stockholders, employees or creditors, and the Client agrees that it shall not make, and hereby waives, any claim based on an assertion of such a fiduciary duty or relationship.

13. **NON-ASSIGNABILITY.** Neither party hereto shall assign this Agreement or any of its rights or interest hereunder without first obtaining the other party's written consent.

14. **TIME OF THE ESSENCE.** Time, whenever mentioned herein shall be of the essence of this Agreement.

15. **BANKRUPTCY RETENTION.** The Client shall use its best efforts to promptly apply to the Bankruptcy Court for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of this agreement and 3-21's retention by the Company under the terms of this agreement, and subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The CLIENT shall supply 3-21 with a draft of such application and any proposed order authorizing 3-21's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable 3-21 and its counsel to review and comment thereon. 3-21 shall have no obligation to provide any services under this Agreement unless

3-21's retention under the terms of this agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to 3-21 in all respects. 3-21 acknowledges that if the Bankruptcy Court approves its retention by the Company, 3-21's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders.

16. **ENTIRE AGREEMENT.** This is the entire Agreement between the Parties regarding the transactions contemplated hereby and there are no other terms, covenants, conditions, provisions, warranties, representations, or statements, oral or otherwise, of any kind whatsoever. Any agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing and signed by the party against whom the enforcement of the change, modifications, discharge or abandonment is sought.

17. **HEADINGS.** The headings, if any, incorporated in this Agreement are for the convenience and reference only and are not part of this Agreement and shall not in any way control, define, limit or add to the terms and conditions hereof.

18. **GOVERNING LAW.** This Agreement shall be construed, interpreted and governed by the laws of the State of Florida

19. **COUNTERPARTS.** This Agreement may be executed in any number of counterparts, each of which shall be original, but such counterparts together shall constitute one and the same instrument.

20. **LEGAL CONSTRUCTION.** In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, the invalidity, illegality or enforceability shall not affect any other provision of this Agreement and this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

21. **BROKER-DEALER REGISTRATION.** Pursuant to the guidance set forth in the Securities and Exchange Commission's no-action letter issued on January 31, 2014 (as revised on February 4, 2014, the "No-Action Letter"), 3-21 represents, and Client understands, acknowledges, and agrees, that 3-21 is not subject to registration as a broker-dealer under Section 15(b) of the Securities Exchange Act of 1934. 3-21 shall not offer or provide advice or service to Client if such advice or service would or may be contrary to the guidance set forth in the No-Action Letter or otherwise require 3-21 to register as a broker-deal under any applicable provision of the Securities Exchange Act of 1934 or any other applicable law, regulation, or rule.

22. **SURVIVAL.** The following paragraphs shall survive and remain in full force and effect following the termination of this Agreement and the completion of 3-21's engagement hereunder: 5 – 12, 16, 18, and 22.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement under seal, as of the day and year first above written.

Gecko Parks, LLC

By: *[signature]*

John Duran
Chief Executive Officer

Aug 26, 2020

THREE TWENTY-ONE CAPITAL PARTNERS, LLC

By: *[signature]*

Ervin M. Terwilliger
Senior Managing Director

SUBJECT TO BANKRUPTCY COURT APPROVAL